FILED

2014 DEC 10 PM 3: 39

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

DONATUS E. ASUMU

CASE NO. 6:14-cr- 277-Orl-18GJK
18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C) - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture

### INFORMATION

The United States Attorney charges:

### COUNT ONE

#### A. Introduction

1. At all times material to this case, Section 9(j) of the Small Business Act required that the Small Business Administration ("SBA") issue a Small Business Innovation Research ("SBIR") and Small Business Technology Transfer ("STTR") Program Policy Directive for the general conduct of the SBIR and STTR Program within the federal government. The statutory purpose of the program was to strengthen the role of innovative small business concerns ("SBCs") in federally funded research and development, and to increase competition, productivity and economic growth. The specific program purposes were to: (a) stimulate technological innovation; (b) use small businesses to meet federal research and development needs; (c) foster and encourage participation in technical innovation by socially and economically disadvantaged SBCs, and by SBCs that are 51% owned and controlled by women; (d) increase private sector

commercialization of innovations derived from federal research and development; and (e) promote cooperative research and development with nonprofit research institutions. Eleven federal agencies participated in the SBIR and STTR Program, including the National Aeronautics and Space Administration ("NASA").

2. NASA was the agency of the United States government responsible for the nation's civilian space program and for aeronautics and aerospace research.

3. NASA issued annual combined solicitations for the SBIR and STTR Program each July via the NASA SBIR/STTR website. The solicitations provided all the information needed for the offeror to submit research/development project proposals. Only firms qualifying as a SBC under the SBA were eligible to participate in the SBIR/STTR Program. Socially and economically disadvantaged and women-owned SBCs were particularly encouraged to submit proposals to the government.

4. The SBIR regulation required that primary employment of the Principal Investigator be with the SBC during the conduct of the contract, meaning that more than one-half of the Principal Investigator's time was to be spent in the employ of the SBC. This precluded full-time employment with another organization.

5. In the certified proposals, the offeror had to complete each section of the proposal, which included: (a) a certification cover sheet; (b) a description of

the work, including, but not limited to, the technical objectives, work plan, related research and development, key personnel working on the project, possible efforts for commercialization, information about company facilities, a disclosure of subcontractors and consultants, and the potential applications of the project; and (c) a budget summary which explained the use of the requested government funds which enabled government officials to determine whether the proposed budget submitted by the offeror was fair and reasonable. The contractor had to electronically submit and upload all proposals onto the NASA Electronic Handbook where they were evaluated and reviewed by NASA officials for possible award.

6. With regards to the budget summary, the offeror had to submit to the government a certified pricing proposal of estimated costs with detailed information for each cost element to include the following: (a) direct labor costs which, specified hourly labor rates of employees, hours needed to complete the project, and total costs (i.e., hourly labor rates x hours needed to complete the project, + any additional overhead costs = total costs) for each employee such as the Chief Scientist, Knowledge Engineer, Software Engineer, and Project Manager; (b) Other Direct Costs ("ODCs"), which specified costs for materials, supplies, tools, equipment, accessories, subcontractors and travel needed to complete the project; and (c) General and Administrative ("G&A") costs, which encompassed the expenses of operating a business that were not directly linked to the company's products or services such as employee benefits, corporate taxes,

3

business development, marketing and sales, etc.

7. Each proposal was judged and scored on its own merits using factors such as (a) the scientific/technical merit and feasibility of the project; (b) the experience and qualifications of key personnel, subcontractors, and the capabilities of the company's facilities; (c) the effectiveness of the proposed work plan; and (d) the commercial potential and feasibility. Before the contract was awarded, however, NASA relied upon all of the information provided by the offeror regarding key personnel, subcontractors, hourly rates, and costs in order to negotiate the contract amount, and determine whether the offeror's budget represented a fair and reasonable price. If the proposal was selected, and if the government believed these cost representations were fair and reasonable during cost negotiations, the contract was awarded and portions of the proposal were then incorporated into the contract, and used as the statement of work.

8. Between in or about 2009, and continuing until in or about 2012, DONATUS E. ASUMU, as president and owner of Aligned Concepts, LLC ("ACL") fraudulently obtained two SBIR contracts from NASA valued at $199,825.00:

| Contract # | Proposal Submission | Value | Period of Performance |
| --- | --- | --- | --- |
| NNX10CC91P ("91P") | 8/31/2009 | $99,832.00 | 1/29/2010 – 7/29/2010 |
| NNX11CD23P ("23P") | 9/2/2010 | $99,993.00 | 2/18/2011 – 8/18/2011 |
| | **TOTAL** | **$199,825.00** | |

### B. Scheme and Artifice

9. Beginning in or about 2009, and continuing until in or about 2012, in Seminole County, Florida, in the Middle District of Florida, and elsewhere,

### DONATUS E. ASUMU

the defendant herein, did knowingly, willfully, and with intent to defraud devise and execute a scheme and artifice to defraud and for obtaining money from the United States, by means of false and fraudulent pretenses, representations, and promises that related to a material fact, and the defendant transmitted and caused to be transmitted wire communications in interstate commerce to execute essential parts of the scheme, which scheme and artifice is described as follows:

### C. Manner and Means

10. It was part of the scheme and artifice that DONATUS E. ASUMU falsely represented to NASA, via wire communication, that ACL met the requirements of the SBIR Program.

11. It was a further part of the scheme and artifice that DONATUS E. ASUMU, as president of ACL, drafted and submitted to NASA via wire communication two SBIR contract proposals that fraudulently represented ACL'S intent to use employees in accordance with agreed-upon labor categories, hours and rates, when in fact DONATUS E. ASUMU had no employees and those individuals did not work or perform any tasks on NASA contracts 91P and 23P.

12. It was a further part of the scheme and artifice that DONATUS E.

ASUMU, as Principal Investigator, falsely represented to NASA via wire communication he was not employed full-time elsewhere, when in fact ASUMU was a full-time employee at Company A.

13. It was a further part of the scheme and artifice that DONATUS E. ASUMU, as president of ACL, responded via wire communication, to an inquiry from NASA requiring additional detail on employees proposed for use to perform the work under contract 23P, by submitting names of individuals whom had no idea they were being proposed for work on NASA contract 23P.

14. It was a further part of the scheme and artifice that DONATUS E. ASUMU, as president of ACL, after having been awarded contracts 91P and 23P by NASA, submitted via wire communication false invoices claiming work had been completed per terms of contracts 91P and 23P and that the costs included were incurred, when in fact ASUMU had not incurred the costs as agreed upon in the contract.

15. It was a further part of the scheme and artifice that DONATUS E. ASUMU, as president of ACL, caused NASA to transmit via wire communication $199,825.00 in contract payments to DONATUS E. ASUMU'S personal bank account as a result of those misrepresentations.

16. It was a further part of the scheme and artifice that DONATUS E. ASUMU purchased a 2011 Nissan Juke, 4 door Sport Utility VIN# JN8AF5MR3BT017034, and other personal commodities, using proceeds from the

fraudulently obtained contracts.

### D. Execution of the Scheme and Artifice Wire

17. On or about September 28, 2011, in Seminole County, Florida, in the Middle District of Florida, and elsewhere,

**DONATUS E. ASUMU**

the defendant herein, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and for obtaining money from NASA by means of materially false and fraudulent pretenses, representations, and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted to NASA by means of wire communication in interstate commerce, an invoice for $39,993.00 requesting payment for costs that were not incurred and work that was not performed pursuant to the terms of contract 23P.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE

1.  The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  From his engagement in the violations alleged in Count One of this Information, the defendant,

**DONATUS E. ASUMU**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, namely a 2011 Nissan Juke, 4 door Sport Utility VIN# JN8AF5MR3BT017034.

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be

divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A. LEE BENTLEY, III
United States Attorney

By: _____
Ilianys Rivera Miranda
Assistant United States Attorney

By: _____
Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division